**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALLEGHENY COUNTY EMPLOYEES' RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KARYOPHARM THERAPEUTICS INC., MICHAEL G. KAUFFMAN, SHARON SHACHAM, JUSTIN A. RENZ, MICHAEL F. FALVEY, GAREN G. BOHLIN, MIKAEL DOLSTEN, SCOTT GARLAND, BARRY E. GREENE, MANSOOR RAZA MIRZA, DEEPA R. PAKIANATHAN, KENNETH E. WEG, CANTOR FITZGERALD & CO., J.P. MORGAN SECURITIES LLC, JEFFERIES LLC, and LEERINK PARTNERS LLC,<br><br>Defendants. | No. 1:19-cv-11597-JGD<br><br>CLASS ACTION |

[Additional caption on following page]

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE PENNSYLVANIA FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF THEIR SELECTION OF LEAD COUNSEL, AND CONSOLIDATION OF ALL RELATED ACTIONS**

| | |
|---|---|
| HEATHER MEHDI, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>KARYOPHARM THERAPEUTICS INC., MICHAEL G. KAUFFMAN, SHARON SHACHAM, JUSTIN A. RENZ, MICHAEL F. FALVEY, GAREN G. BOHLIN, MIKAEL DOLSTEN, SCOTT GARLAND, BARRY E. GREENE, MANSOOR RAZA MIRZA, DEEPA R. PAKIANATHAN, and KENNETH E. WEG,<br><br>      Defendants. | No. 1:19-cv-11972-JGD<br><br><u>CLASS ACTION</u> |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL BACKGROUND .................................................................................................3

ARGUMENT ...........................................................................................................................5

    I.   THE PENNSYLVANIA FUNDS SHOULD BE APPOINTED LEAD
        PLAINTIFF ..................................................................................................................5

        A.  The PSLRA's Lead Plaintiff Procedural Prerequisites Have Been Met ........................5

        B.  The Pennsylvania Funds Should Be Appointed Lead Plaintiff .....................................6

            1.   The Pennsylvania Funds Have the Largest Financial Interest ................................6

            2.   The Pennsylvania Funds Otherwise Satisfy Rule 23 ................................................6

    II.  THE PENNSYLVANIA FUNDS' CHOICE OF LEAD AND LIAISON
        COUNSEL SHOULD BE APPROVED ............................................................................11

    III. THE RELATED ACTIONS SHOULD BE CONSOLIDATED ........................................12

CONCLUSION ...........................................................................................................................14

## **TABLE OF AUTHORITIES**

**CASES**                                                       **PAGE(S)**

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
   258 F.R.D. 260 (S.D.N.Y. 2009) ...............................................................................................9

*Carr v. Analogic Corp.*,
   No. 18-cv-11301-ADB, 2018 WL 4932858 (D. Mass. Oct. 10, 2018) ...................................13

*Clark v. Barrick Gold Corp.*,
   No. 13 Civ. 3851 (RPP), 2013 WL 5300698 (S.D.N.Y. Sept. 20, 2013) ................................10

*Gilliam v. Fidelity Mgmt. & Research Co.*,
   Civ. A. No. 04-11600-NG, 2005 WL 1288105 (D. Mass. 2005) ............................................12

*Glauser v. EVCI Career Colls. Holding Corp.*,
   236 F.R.D. 184 (S.D.N.Y. 2006) .............................................................................................13

*Greebel v. FTP Software, Inc.*,
   939 F. Supp. 57 (D. Mass. 1996) .............................................................................................10

*In re Lernout & Hauspie Sec. Litig.*,
   138 F. Supp. 2d 39 (D. Mass. 2001) .......................................................................................10

*Local No. 8 IBEW Ret. Plan v. Vertex Pharms. Inc.*,
   52. F. Supp. 3d 337 (D. Mass. 2014) ........................................................................................7

*Lowinger v. Glob. Cash Access Holdings, Inc.*,
   No. 08 Civ. 3516(SWK), 2008 WL 2566558 (S.D.N.Y. June 26, 2008) ................................13

*Metzler Asset Mgmt. GMBH v. Kinglsey*,
   No. 16-12101-FDS, 2017 WL 438731 (D. Mass. Feb. 1, 2017) .............................................10

*Reimer v. Ambac Fin. Grp., Inc.*,
   No. 08 Civ. 411(NRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008) .......................................9

*Seguro De Servicio De Salud De Puerto Rico v. McAuto Sys. Grp., Inc.*,
   878 F.2d 5 (1st Cir. 1989) ........................................................................................................13

*State Univ. Ret. Sys. of Ill. v. Sonus Networks, Inc.*,
   C.A. No. 06-10040-MLW, 2006 WL 3827441 (D. Mass. Dec. 27, 2006) ......................6, 7, 11

*In re Tyco Int'l, Ltd. Sec. Litig.*,
   No. 00-MD-1335-B, 2000 WL 1513772 (D.N.H. Aug. 17, 2000) ......................................2, 10

**STATUTES**

15 U.S.C. § 77z-1(a)(1) .................................................................................................................5

15 U.S.C. § 77z-1(a)(3)(A) ............................................................................................................5

15 U.S.C. § 77z-1 (a)(3)(B)(i) ....................................................................................................2, 5

15 U.S.C. § 77z-1(a)(3)(B)(iii) ..................................................................................................6, 10

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) ...............................................................................................2, 6

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb) .............................................................................................6

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc) .............................................................................................6

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa) ..........................................................................................11

15 U.S.C § 77z-1(a)(3)(B)(v) ........................................................................................................11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a)(4) ..................................................................................................................7

Fed. R. Civ. P. 42(a) ....................................................................................................................12

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995) ....................10

Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees Represented by Local 85 of the Amalgamated Transit Union ("PAT"), the Southeastern Pennsylvania Transportation Authority ("SEPTA"), and the Allegheny County Employees' Retirement System ("Allegheny County") (collectively, the "Pennsylvania Funds"), respectfully submit this Memorandum of Law in support of their Motion, pursuant to Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"),[1] for an order: (1) appointing the Pennsylvania Funds as Lead Plaintiff; (2) approving their selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel and Block & Leviton LLP ("Block & Leviton") to serve as Liaison Counsel; (3) consolidating the related actions; and (4) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

On July 23, 2019, Allegheny County, through its counsel, Bernstein Litowitz, filed the first of the above-captioned securities class actions (the "Action") alleging that between March 2, 2017 and February 22, 2019, inclusive (the "Class Period"), Karyopharm Therapeutics Inc. ("Karyopharm" or the "Company") and certain of its current and former senior executives defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). The Action also alleges violations of Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l, and 77o) against Karyopharm, certain of its current and former senior executives and directors, and certain underwriters (collectively, "Defendants") in connection with the Company's April 28, 2017 and May 7, 2018 public

---

[1] Because the lead plaintiff provisions of the Securities Act and the Securities Exchange Act of 1934 ("Exchange Act") are identical, only citations to the Securities Act are provided.

offerings of commons stock (the "Offerings"). The Action alleges that Defendants falsely represented the safety profile of Karyopharm's leading drug prospect, selinexor. Specifically, Defendants represented that selinexor presented a "predictable and manageable tolerability profile," as demonstrated in two clinical trials, when, in reality, these clinical trials had resulted in a worse overall survival rate for patients. The revelation of these facts, and others more fully described below and in Allegheny County's complaint, caused the Pennsylvania Funds and other investors to incur significant losses.

Pursuant to the PSLRA, the Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 77z-1 (a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class and that also makes a *prima facie* showing that it meets the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). For the reasons set forth below, the Pennsylvania Funds are the "most adequate plaintiff" by virtue of the approximately $470,000 in losses they incurred on the approximately 57,000 shares of Karyopharm stock that they purchased during the Class Period—a substantial financial interest that will ensure the vigorous prosecution of investors' claims.[2]

In addition to asserting the largest financial interest, the Pennsylvania Funds readily satisfy the relevant requirements of Rule 23 because their claims are typical of all members of the Class, and they will fairly and adequately represent the Class. The Pennsylvania Funds are a small, cohesive group of three institutional investors with substantial financial stakes in the litigation and the ability to direct the litigation separate and apart from their counsel. *See In re*

---

[2] The Pennsylvania Funds' PSLRA-required Certifications are provided as Exhibit A to the Declaration of Jacob A. Walker ("Walker Decl."). In addition, charts setting forth calculations of the Pennsylvania Funds' losses are provided as Exhibit B to the Walker Decl.

*Tyco Int'l, Ltd. Sec. Litig.*, No. 00-MD-1335-B, 2000 WL 1513772, at *4 (D.N.H. Aug. 17, 2000) (finding "that the appointment of a group of three substantial shareholders as lead plaintiff is consistent with the language and purpose of the PSLRA"). In addition, as set forth in greater detail in their Joint Declaration submitted herewith, the Pennsylvania Funds fully understand the Lead Plaintiff's obligations to the Class under the PSLRA and are willing and able to undertake these responsibilities to ensure the vigorous prosecution of this action.[3]

The Pennsylvania Funds have also demonstrated their adequacy through their selection of Bernstein Litowitz as proposed Lead Counsel for the Class. The Pennsylvania Funds selected Bernstein Litowitz, in substantial part, based on their prior experience with the firm and the firm's established track record of achieving substantial recoveries for the benefit of investors. Bernstein Litowitz is eminently qualified to prosecute this case and has extensive experience in securities fraud litigation, which will benefit the Class. *See* Walker Decl., Ex. C ¶13. Based on the Pennsylvania Funds' superior financial interest and their commitment and ability to jointly oversee this action in a cohesive and coordinated fashion, the Pennsylvania Funds respectfully request that the Court appoint them as Lead Plaintiff and otherwise grant their motion.

## FACTUAL BACKGROUND[4]

Karyopharm is a clinical-stage pharmaceutical company focused on the development of drugs for the treatment of cancer based in Newton, Massachusetts. At all relevant times, Karyopharm's lead drug candidate was selinexor, a drug intended for the treatment of various

---

[3] *See* Joint Declaration Sabatino Di Nardo, Jr., Gino Benedetti, and John K. Weinstein in Support of the Motion of the Pennsylvania Funds for Appointment as Lead Plaintiff, Approval of Their Selection of Lead Counsel, and Consolidation of All Related Actions, Walker Decl., Ex. C.

[4] The facts herein are derived from Allegheny County's complaint. *See Allegheny Cty. Emps.' Ret. Sys. v. Karyopharm Therapeutics Inc.*, No. 1:19-cv-11597-JGD (D. Mass. filed July 23, 2019) ("*Allegheny County*"), ECF No 1.

3

types of cancer, including principally blood cancers. During the Class Period, Karyopharm conducted clinical trials for selinexor's treatment of patients with certain types of blood cancer, including the Phase 2 SOPRA trial ("SOPRA"), which evaluated selinexor for treatment of patients with acute myeloid leukemia ("AML"); and Part 2 of the Phase 2b STORM trial ("STORM"), which evaluated the safety and efficacy of selinexor in treating patients with multiple myeloma.

On March 2, 2017, the first day of the Class Period, Karyopharm announced that it had halted its SOPRA trial because the study did not reach statistical significance for overall survival among AML patients. In its explanation for halting this trial, Karyopharm assured investors that selinexor was "well-tolerated" by patients and explained that there were "no new clinically significant adverse events in the patients receiving selinexor." The Company continued testing selinexor in the STORM study and repeatedly touted selinexor's safety profile.

Throughout the Class Period, Karyopharm repeatedly touted the commercial prospects for selinexor, describing the drug as having a "predictable and manageable tolerability profile" and a "very nice safety profile," and assured investors that it was "well tolerated" by patients. The Company claimed that selinexor had the potential to be used as a new treatment for MM, with limited, manageable side effects. As a result of these misrepresentations, Karyopharm shares traded at artificially inflated prices during the Class Period.

The truth was revealed on February 22, 2019, when, in advance of an FDA advisory committee meeting to review Karyopharm's New Drug Application ("NDA") for selinexor and assess selinexor's risks and benefits, the FDA released a briefing document expressing serious concerns about the safety and efficacy of selinexor. Specifically, the FDA's report revealed that, contrary to Karyopharm's assurances, the previously cancelled SOPRA trial had resulted in a

4

"worse overall survival" rate for AML patients treated with selinexor, which "highlight[ed] the toxicity of this drug." The FDA determined that the toxicity observed with selinexor in AML patients in the SOPRA study was "similar" to that observed in multiple myeloma patients in the STORM study. The FDA unambiguously concluded that "[t]reatment with selinexor is associated with significant toxicity" and has "limited efficacy." On this news, the price of the Company's stock plummeted, falling from $8.97 per share to $5.07 per share, or more than 43%.

## ARGUMENT

**I.     THE PENNSYLVANIA FUNDS SHOULD BE APPOINTED LEAD PLAINTIFF**

**A.     The PSLRA's Lead Plaintiff Procedural Prerequisites Have Been Met**

The PSLRA establishes a procedure that governs the appointment of a Lead Plaintiff in "each private action arising under the [Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(1); *see also* 15 U.S.C. § 77z-1(a)(3)(B)(i). Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 77z-1(a)(3)(A). On July 23, 2019, plaintiff Allegheny County filed the first securities class action complaint asserting claims under Sections 11, 12 and 15 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act against Defendants. *See Allegheny County*, ECF No. 1. On the same day, counsel for Allegheny County, Bernstein Litowitz, published notice of pendency of *Allegheny County* and set the deadline to seek Lead Plaintiff status by September 23, 2019. *See* Walker Decl., Ex. D. Accordingly, the Pennsylvania Funds satisfy the PSLRA 60-day requirement through the filing of this motion on September 23.

5

**B.     The Pennsylvania Funds Should Be Appointed Lead Plaintiff**

The Pennsylvania Funds respectfully submit that they should be appointed Lead Plaintiff because they are the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 77z-1(a)(3)(B). When selecting Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant with "the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of [Rule 23]." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)

**1.     The Pennsylvania Funds Have the Largest Financial Interest**

The Pennsylvania Funds should be appointed Lead Plaintiff because they believe that they have the largest financial interest in the relief sought by the Class. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb). As demonstrated herein, the Pennsylvania Funds sustained total losses of approximately $470,000 on their purchases of approximately 57,000 shares of Karyopharm stock. *See* Walker Decl., Exs. A-B. To the best of the Pennsylvania Funds' knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in the litigation. Accordingly, the Pennsylvania Funds have the largest financial interest of any qualified movant seeking Lead Plaintiff status, and are the presumptive "most adequate plaintiff." 15 U.S.C. § 77z-1(a)(3)(B)(iii).

**2.     The Pennsylvania Funds Otherwise Satisfy Rule 23**

In addition to possessing the largest financial interest in the outcome of the litigation, the Pennsylvania Funds otherwise satisfy the requirements of Rule 23. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, the movant must make only "a *prima facie* showing" that it satisfies the adequacy and typicality requirements of Rule 23. *State Univ. Ret. Sys. of Ill. v. Sonus Networks, Inc.*, C.A. No. 06-10040-MLW, 2006 WL 3827441, at

\*2 (D. Mass. Dec. 27, 2006).  Here, the Pennsylvania Funds unquestionably satisfy both requirements.

Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all Class members.  *See Local No. 8 IBEW Ret. Plan v. Vertex Pharms. Inc.*, 52. F. Supp. 3d 337, 341 (D. Mass. 2014).  Here, the Pennsylvania Funds satisfy this requirement because, just like all other Class members, they purchased Karyopharm stock during the Class Period at prices artificially inflated as a result of Defendants' materially false and misleading statements and suffered damages thereby.  *See Sonus*, 2006 WL 3827441, at \*2 (lead plaintiff movant typical when "no indication that the circumstances of its losses are markedly different than those of other class members or are based on a legal theory that is not generally applicable") (citation omitted).  As such, the Pennsylvania Funds are a typical Class representative.

The Pennsylvania Funds similarly satisfy the adequacy requirement of Rule 23.  Under Rule 23(a)(4) the representative parties must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In order for the Class' interests to be fairly and adequately protected, the Lead Plaintiff must possess "common interests and an absence of conflict with the class members" and "plaintiff's attorneys [must be] qualified, experienced, and vigorously able to conduct the litigation."  *Vertex*, 52 F. Supp. 3d at 341 (citation omitted).

Here, the Pennsylvania Funds—a small, cohesive group of three investors with a substantial financial stake in the litigation—are an adequate representative of the Class.  The Pennsylvania Funds' interests are perfectly aligned with the interests of all Class members and are not antagonistic in any way.  The Pennsylvania Funds submitted sworn Certifications attesting to their willingness, commitment, and desire to oversee the prosecution of this case

7

efficiently, and separate and apart from their lawyers. *See* Walker Decl., Ex A. Through those Certifications, the Pennsylvania Funds accept the fiduciary obligations they will assume if appointed Lead Plaintiff, and will zealously represent the interests of all Class members.

To further demonstrate their ability to litigate this case in the best interests of the Class, the members of the Pennsylvania Funds submitted a Joint Declaration, which sets forth information regarding each member of the group, describes the formation of the group, their experiences participating in securities class action litigation individually and as part of other Lead Plaintiff groups, and affirms their understanding of the duties owed to the Class. *See* Walker Decl., Ex. C. Through their Joint Declaration and their PSLRA Certifications, the Pennsylvania Funds have demonstrated that they accept the fiduciary obligations that they will assume if appointed Lead Plaintiff.

The Joint Declaration also establishes that the Pennsylvania Funds determined on their own to seek joint appointment as Lead Plaintiff and that they will prosecute the litigation separate and apart from their lawyers. *See id*. ¶¶7-8. After learning of the filing of the complaint by Allegheny County, and recognizing Allegheny County's commitment to protecting the interests of the Class, PAT and SEPTA each determined that it would be in their and other Class members' best interest to seek joint appointment together with Allegheny County. *See id*. ¶7. Recognizing that PAT and SEPTA were like-minded institutional investors that suffered substantial losses on their respective investments in Karyopharm stock during the Class Period, Allegheny County similarly agreed that it would be in its and other Class members' best interest to seek joint appointment as Lead Plaintiff. *See id*. The Pennsylvania Funds' decision to seek joint Lead Plaintiff appointment was also influenced by the pre-existing personal and professional relationships among representatives of the Pennsylvania Funds, as discussed in

8

greater detail in the Joint Declaration, and the collaborative history and experience they would bring to the leadership of the Action. *See id.* ¶9.

The Pennsylvania Funds are committed to jointly prosecuting this case. Representatives of the Pennsylvania Funds agreed that they will receive regular updates from counsel to ensure that the Pennsylvania Funds are positioned to carry out the duties required of a Lead Plaintiff under the PSLRA, participate in decisions concerning litigation strategy, review significant litigation documents, and attend depositions, settlement mediations, and court proceedings. *See id.* ¶14.

Drawing upon their collective resources and experience, the Pennsylvania Funds are well suited for this litigation and would advance the interests of the Class. PAT, SEPTA, and Allegheny County are sophisticated institutional investors that, collectively, have experience serving in lead plaintiff groups in complex securities class actions. *See id*. ¶¶2-5, 8. Moreover, SEPTA has a demonstrated history of securing significant recoveries on behalf of defrauded investors, which will benefit the Class. For example, SEPTA, serving as co-lead plaintiff alongside two other institutional investors, successfully prosecuted *In re Wachovia Preferred Securities and Bond/Notes Litigation*, No. 09-cv-6351 (S.D.N.Y.), with Bernstein Litowitz as co-lead counsel, and achieved a recovery of $627 million for the class. SEPTA also served as co-lead plaintiff in *In re Michael Baker Corp. Securities Litigation*, No. 08-cv-370 (W.D. Pa.), successfully recovering $4.5 million for investors.

Such evidence is more than adequate to satisfy the adequacy and typicality requirements. *See, e.g.*, *Reimer v. Ambac Fin. Grp., Inc*., No. 08 Civ. 411(NRB), 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (appointing group that submitted declaration demonstrating initiative to litigate action separate and apart from lawyers); *In re Bank of Am. Corp. Sec., Derivative &*

*ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing group and noting that "declarations demonstrating cooperative efforts among" the group's members satisfies concerns that they are dominated by counsel); *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 43 (D. Mass. 2001) (appointing group based, in part, on the group's commitment to maintain frequent communication).

Further, the Pennsylvania Funds are the very sort of Lead Plaintiff envisioned by Congress in its enactment of the PSLRA—a sophisticated group of institutional investors with a substantial interest in the litigation. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"). The PSLRA expressly states that a "group of persons" is eligible to serve as Lead Plaintiff, 15 U.S.C. § 77z-1(a)(3)(B)(iii), and courts in this District as well as others in the First Circuit and throughout the Country have routinely appointed small groups of investors that have a substantial financial stake in the litigation, such as the Pennsylvania Funds, as Lead Plaintiff. *See, e.g.*, *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 64 (D. Mass. 1996) (appointing three investors as Lead Plaintiff); *In re Tyco*, 2000 WL 1513772, at *4 ("a group that consists of a small number of large shareholders should be capable of managing this litigation and providing direction to class counsel"); *Metzler Asset Mgmt. GMBH v. Kinglsey*, No. 16-12101-FDS, 2017 WL 438731, at *1 (D. Mass. Feb. 1, 2017) (appointing group of two investors as Lead Plaintiff); *Clark v. Barrick Gold Corp.*, No. 13 Civ. 3851 (RPP), 2013 WL 5300698, at *1-2 (S.D.N.Y. Sept. 20, 2013) (appointing group of two investors as Lead Plaintiff).

Finally, as explained below, the Pennsylvania Funds have demonstrated their adequacy through their selection of Bernstein Litowitz to serve as Lead Counsel for the Class—a highly qualified law firm with extensive experience litigating securities class action lawsuits.  *See Sonus*, 2006 WL 3827441, at *2 (movant made *prima facie* showing of adequacy where it had "both the ability and incentive to represent the class vigorously" and had "retained experienced counsel to do so").  Accordingly, the Pennsylvania Funds satisfy the typicality and adequacy requirements of Rule 23.

## II.   THE PENNSYLVANIA FUNDS' CHOICE OF LEAD AND LIAISON COUNSEL SHOULD BE APPROVED

The Court should approve the Pennsylvania Funds' selection of Bernstein Litowitz to serve as Lead Counsel and Block & Leviton to serve as Liaison Counsel.  Pursuant to 15 U.S.C § 77z-1(a)(3)(B)(v), the Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the Class.  The Court should not disturb the Lead Plaintiff's choice of counsel unless it is necessary to "protect the interests of the class."  15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).  Bernstein Litowitz has a demonstrated history of successfully prosecuting complex securities class actions on behalf of injured investors.  *See* Walker Decl., Ex. E (firm résumé of Bernstein Litowitz).  Block & Leviton, based in Boston, also has extensive securities litigation experience.  *See* Walker Decl., Ex. F (firm résumé of Block & Leviton).

Bernstein Litowitz is among the preeminent securities class action law firms in the country.  Bernstein Litowitz served as lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-03288 (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the class.  Bernstein Litowitz also served as lead counsel in *In re Cendant Corporation Securities Litigation*, No. 98-cv-1664 (D.N.J.), in which settlements in excess of $3.3 billion in cash and extensive corporate

11

governance reforms were obtained on behalf of the class. More recently, Bernstein Litowitz secured a $1.06 billion recovery for the class in *In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation*, No. 05-cv-1151 (D.N.J.), and served as lead counsel and obtained a $480 million recovery on behalf of the class in *Hefler v. Wells Fargo & Company*, No. 16-cv-5479 (N.D. Cal.).

Other significant examples in which courts, including courts in this Circuit and District, have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include: *In re Wachovia Preferred Securities and Bond/Notes Litigation*, No. 09-cv-6351-RJS (S.D.N.Y) (recovering $627 million for investors, with SEPTA as lead plaintiff); *Hill v. State Street Corporation*, No. 09-cv-12146 (D. Mass.) (recovering $60 million for investors); *Hoff v. Popular, Inc.*, No. 09-cv-01428-GAG-BJM (D.P.R.) (recovering $37.5 million for investors); *Levy v. Gutierrez*, No. 14-cv-443 (D.N.H.) (recovering $36.7 million for investors); and *Louisiana Municipal Police Employees' Retirement System v. Green Mountain Coffee Roasters, Inc.*, No. 11-cv-289 (D. Vt.) (recovering $36.5 million for investors).

Thus, the Court may be assured that, in the event this motion is granted, the Class will receive the highest caliber of legal representation available. Accordingly, the Court should approve the Pennsylvania Funds' selection of Bernstein Litowitz as Lead Counsel and Block & Leviton as Liaison Counsel for the Class.

### III. THE RELATED ACTIONS SHOULD BE CONSOLIDATED

There are currently at least two related securities class actions against Karyopharm pending in this District:

| Case Number | Abbreviated Case Name | Date Filed |
|---|---|---|
| 1:19-cv-11597 | *Allegheny County v. Karyopharm Therapeutics Inc.* | 07/23/2019 |
| 1:19-cv-11972 | *Mehdi v. Karyopharm Therapeutics Inc.* | 09/17/2019 |

Consolidation is appropriate where, as here, there are actions pending in the same court that involve common questions of fact or law. *See* Fed. R. Civ. P. 42(a); *see also Gilliam v. Fidelity Mgmt. & Research Co.*, Civ. A. No. 04-11600-NG, 2005 WL 1288105, at *1 (D. Mass. 2005) (citing *Seguro De Servicio De Salud De Puerto Rico v. McAuto Sys. Grp., Inc.*, 878 F.2d 5, 8 (1st Cir. 1989)). "Consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports." *Lowinger v. Glob. Cash Access Holdings, Inc.*, No. 08 Civ. 3516(SWK), 2008 WL 2566558, at *1 (S.D.N.Y. June 26, 2008) (citing *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 186 (S.D.N.Y. 2006)). Consolidation of the above-captioned actions is appropriate since they both assert similar claims based on the same or similar legal and factual allegations. In addition, the interests of judicial economy weigh heavily in favor of consolidation given the substantial overlap of common questions of law and fact between them. *See Carr v. Analogic Corp.*, No. 18-cv-11301-ADB, 2018 WL 4932858, at *1 (D. Mass. Oct. 10, 2018) ("[C]onsolidation pursuant to Rule 42(a) . . . expedites pretrial proceedings, reduces case duplication, avoids the need to contact parties and witnesses for multiple proceedings, and minimizes the expenditure of time and money for all parties involved.") (citation omitted). Accordingly, the Court should consolidate the above-captioned actions and any other subsequently filed or transferred shareholder actions that are related to the claims in this matter.

## CONCLUSION

For the reasons stated above, the Pennsylvania Funds respectfully request that the Court: (1) appoint them Lead Plaintiff; (2) approve their selection of Bernstein Litowitz as Lead Counsel and Block & Leviton as Liaison Counsel; (3) consolidate the related actions; and (4) grant such other and further relief as the Court may deem just and proper.

Dated: September 23, 2019

**BLOCK & LEVITON LLP**

/s/ Jacob A. Walker
Jeffrey C. Block (BBO #600747)
Jacob A. Walker (BBO #688074)
260 Franklin Street, Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600
Facsimile: (617) 507-6020
jeff@blockesq.com
jake@blockesq.com

*Liaison Counsel for Lead Plaintiff Movant the Pennsylvania Funds and Proposed Liaison Counsel for the Class*

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

Hannah Ross, *pro hac vice* forthcoming
Avi Josefson, *pro hac vice* forthcoming
Michael D. Blatchley, *pro hac vice* forthcoming
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
michaelb@blbglaw.com

*Counsel for Lead Plaintiff Movant the Pennsylvania Funds and Proposed Lead Counsel for the Class*

---

**Certificate of Service**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants on September 23, 2019.

/s/ Jacob A. Walker

---