## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLEGHENY COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>KARYOPHARM THERAPEUTICS INC., MICHAEL G. KAUFFMAN, SHARON SHACHAM, JUSTIN A. RENZ, MICHAEL F. FALVEY, GAREN G. BOHLIN, MIKAEL DOLSTEN, SCOTT GARLAND, BARRY E. GREENE, MANSOOR RAZA MIRZA, DEEPA R. PAKIANATHAN, KENNETH E. WEG, CANTOR FITZGERALD & CO., J.P. MORGAN SECURITIES LLC, JEFFERIES LLC, and LEERINK PARTNERS LLC,<br><br>        Defendants. | Case No.: 1:19-cv-11597-NMG<br><br>CLASS ACTION |
| HEATHER MEHDI, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>KARYOPHARM THERAPEUTICS INC., MICHAEL G. KAUFFMAN, SHARON SHACHAM, JUSTIN A. RENZ, MICHAEL F. FALVEY, GAREN G. BOHLIN, MIKAEL DOLSTEN, SCOTT GARLAND, BARRY E. GREENE, MANSOOR RAZA MIRZA, DEEPA R. PAKIANATHAN, KENNETH E. WEG<br><br>        Defendants. | Case No.: 1:19-cv-11972-NMG<br><br>CLASS ACTION |

## MYO THANT'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTION FOR APPOINTMENT AS LEAD PLAINTIFF

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT .................................................................................................... 4

    A.    Mr. Thant Must Be Appointed As Lead Plaintiff ...................................... 4

        1.    The Procedure Required By the PSLRA ................................................ 4

        2.    Mr. Thant Claims the Largest Financial Interest Among the Competing Movants ................................................................................................... 5

            i.    Mr. Thant Has the "Largest Financial Interest" ............................. 5

            ii.    Mr. Thant Has The Largest Financial Interest of Any Movant Under All *Lax* Factors ..................................................................................... 7

            iii.    Mr. Thant Has The Largest Individual Financial Interest............................ 11

        3.    Mr. Thant Satisfies the Adequacy and Typicality Requirements of Rule 23 ....... 11

            i.    Mr. Thant Satisfies the Typicality Requirement ........................................ 12

            ii.    Mr. Thant Satisfies the Adequacy Requirement ......................................... 12

    B.    The Group Should Not Be Allowed to Aggregate Its Financial Interest ................... 15

    C.    The Group Should Not Be Appointed Over Mr. Thant Merely By Virtue of Its Institutional Status ....................................................................................... 17

    D.    The Court Should Approve Mr. Thant's Choice of Counsel ..................................... 18

CONCLUSION ................................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ark. Teacher Ret. Sys. v. Insulet Corp.*,
    177 F. Supp. 3d 618 (D. Mass. 2016) ............................................................................. 2, 5, 6

*Cambridge Ret. Sys. v. Mednax, Inc.*,
    No. 18-61572-CIV-DIMITROULEAS/S, 2018 U.S. Dist. LEXIS 207064 (S.D. Fla. Dec. 6,
    2018) ...................................................................................................................................... 10

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) .................................................................................................................. 6

*Eichenholtz v. Verifone Holdings, Inc.*,
    No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008) ............... 16

*Francisco v. Abengoa, S.A.*,
    2016 U.S. Dist. LEXIS 68145 (S.D.N.Y. May 24, 2016) ...................................................... 17

*Gronich v. Omega Healthcare Inv'rs., Inc.*,
    2018 U.S. Dist. LEXIS 51934 (S.D.N.Y. Mar. 27, 2018) ..................................................... 17

*Hackel v. AVEO Pharm., Inc*,
    Civil Action No. 19-cv-10783-ADB, 2019 U.S. Dist. LEXIS 75672 (D. Mass. May 6, 2019)
    .................................................................................................................................................. 12

*Hall v. Medicis Pharm. Corp.*,
    No. CV-08-1821-PHX-GMS, 2009 U.S. Dist. LEXIS 24093 (D. Ariz. Mar. 10, 2009) ........ 17

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ............................................................................................. 2, 17

*In re Critical Path, Inc. Sec. Litig.*,
    156 F. Supp. 2d 1102 (N.D. Cal. 2001) ............................................................................... 10

*In re Groupon Sec. Litig.*,
    No. 12 C 2450, 2012 U.S. Dist. LEXIS 123899 (N.D. Ill. Aug. 28, 2012) ........................... 17

*In re Lernout & Hauspie Sec. Litig.*,
    138 F. Supp. 2d 39 (D. Mass. 2001) ............................................................................. passim

*In re Van Wagoner Funds Inc. Sec. Litig.*,
    No. C 02-03383 JSW, 2003 U.S. Dist. LEXIS 28789 (N.D. Cal. Apr. 9, 2003) .................... 16

*Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*,
    No. 15-CV-3599 (KMW), 2015 U.S. Dist. LEXIS 153202 (S.D.N.Y. Nov. 12, 2015) ......... 15

*Kaplan v. Gelfond*,
 240 F.R.D. 88 (S.D.N.Y. 2007) ........................................................................ 3

*Kapur v. USANA Health Scis., Inc.*,
 No. 2:07CV177DAK, 2007 U.S. Dist. LEXIS 77258 (D. Utah Oct. 17, 2007) ..................... 13

*Khunt v. Alibaba Grp. Holding Ltd.*,
 102 F. Supp. 3d 523 (S.D.N.Y. 2015) ................................................................ 15

*Kniffin v. Micron Tech., Inc.*,
 379 F. Supp. 3d 259 (S.D.N.Y. 2019) ............................................................ 5, 15

*Lax v. First Merchs. Acceptance Corp.*,
 Case No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ............... passim

*Leavitt v. Alnylam Pharm., Inc.*,
 378 F. Supp. 3d 60 (D. Mass. 2019) ............................................................. passim

*Leech v. Brooks Automation, Inc.*,
 No. 06-11068-RWZ, 2006 U.S. Dist. LEXIS 90153 (D. Mass. Dec. 13, 2006) .............. 6, 12

*Lifestyle Invs., LLC v. Amicus Therapeutics, Inc.*,
 Civil Action No. 3:15-cv-7350 (FLW) (DEA), 2016 U.S. Dist. LEXIS 68952 (D.N.J. May
 26, 2016) ...................................................................................... 16

*Local No. 8 IBEW Ret. Plan v. Vertex Pharm. Inc.*,
 52 F. Supp. 3d 337 (D. Mass. 2014) ................................................................ 13

*Maliarov v. Eros Int'l PLC*,
 No. 15-CV-8956 (AJN), 2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016) ................................ 18

*Markette v. Xoma Corp.*,
 No. 15-cv-03425-HSG, 2016 U.S. Dist. LEXIS 63701 (N.D. Cal. May 13, 2016) ............ 3, 9

*Marsch v. Feng*,
 No. 12 Civ. 9456 (JSR), 2013 WL 3204193 (S.D.N.Y. June 12, 2013) ......................... 13

*Nicolow v. Hewlett Packard Co.*,
 No. 12-05980 CRB, 2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013) ..................... 8

*Pio v. GM Co.*,
 No. 14-11191, 2014 U.S. Dist. LEXIS 151205 (E.D. Mich. Oct. 24, 2014) ................. 2, 7, 10

*Schueneman v. Arena Pharm., Inc.*,
 No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373 (S.D. Cal. Aug. 8, 2011) ........... 10

*Swack v. Credit Suisse First Bos.*,
 230 F.R.D. 250 (D. Mass. 2005) .................................................................... 12

**Statutes**

15 U.S.C. § 77z-1(a)(3)(B)(iii) ................................................................................................. 1

15 U.S.C. § 78u-4(a)(2) ........................................................................................................... 13

15 U.S.C. § 78u-4(a)(3)(B)(i) ................................................................................................... 4

15 U.S.C. § 78u-4(a)(3)(B)(iii) ................................................................................................. 1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................................. 4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ...................................................................................... 4

15 U.S.C. § 78u-4(a)(3)(B)(v) ................................................................................................. 17

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................... passim

Movant Myo Thant ("Thant" or "Movant")[1] respectfully submits this memorandum of law in opposition to the competing motion for appointment as lead plaintiff and in further support of his motion for consolidation, appointment as lead plaintiff, and approval of selection of counsel.

## PRELIMINARY STATEMENT

Pending before the Court are two competing motions seeking consolidation of the Actions, appointment as lead plaintiff of the consolidated action, and approval of selection of lead counsel. Mr. Thant timely filed his motion seeking appointment as lead plaintiff, claiming the largest financial interest in the relief sought by the Class, and seeking approval of his selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as lead counsel. Dkt. No. 8. The other motion was filed by three separate and distinct entities: (1) the Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees Represented by Local 85 of the Amalgamated Transit Union ("PAT"); (2) the Southeastern Pennsylvania Transportation Authority ("SEPTA"); **and** (3) the Allegheny County Employees' Retirement System ("Allegheny"). Dkt. No. 11. The three foregoing movants were assembled by their counsel, Bernstein Litowitz Berger & Grossmann LLP ("BLBG"), given the name the "Pennsylvania Funds," and are referred to herein as the "Group."

Mr. Thant is the presumptive lead plaintiff because he satisfies the "three criteria which trigger" the strong presumption created by the PSLRA. *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 42 (D. Mass. 2001) (Saris, J.).[2] Mr. Thant: (1) timely filed his motion in response to the notice published by Allegheny, the plaintiff in the first-filed Action; (2) has the largest financial interest of any movant before the Court; and (3) satisfies the typicality and adequacy requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); 15 U.S.C. § 77z-1(a)(3)(B)(iii).[3]

---

[1] Unless otherwise defined herein, all defined terms shall have the same meaning ascribed to them in Mr. Thant's Opening Memorandum of Law in Support of his Motion. Dkt. No. 9.

[2] Unless otherwise noted, all internal citations and quotations are omitted and all emphasis is added.

[3] Because the lead plaintiff provisions of the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act") are identical, only citations to the Exchange Act are provided.

In this District, Circuit, and across the country, courts commonly apply the four *Lax* Factors—(i) gross shares purchased during the Class Period, (ii) net shares purchased during the Class Period, (iii) net expenditures during the Class Period, and (iv) loss suffered (the "*Lax* Factors")—in determining which movant has the largest financial interest. *Lax v. First Merchs. Acceptance Corp.*, Case No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997). In cases like this where the subject company's stock price declines *prior* to the corrective disclosure and thus, that price decline is unrelated to the alleged fraud, courts apply the retained share method to determine the fourth *Lax* Factor (losses suffered) because it best ascertains a movant's losses resulting from the alleged fraud. *See Ark. Teacher Ret. Sys. v. Insulet Corp.*, 177 F. Supp. 3d 618, 622 (D. Mass. 2016) (Wolf, J.) ("courts have held that the number of net shares purchased during the class period is determinative because it equates directly with potential recovery.").[4] The retained share method isolates the movant's ***recoverable*** loss by multiplying shares retained through the corrective disclosure by the stock price drop on the corrective disclosure date, thereby excluding losses from price declines prior to the corrective disclosure and unrelated to the alleged fraud. The Group's counsel, BLBG, has successfully argued in favor of the retained share methodology in similar circumstances. *See e.g. Pio v. GM Co.*, No. 14-11191, 2014 U.S. Dist. LEXIS 151205, at *21-23 (E.D. Mich. Oct. 24, 2014) (applying retained share methodology in determining largest financial interest) ("*Pio*").

As demonstrated in the table below, pursuant to the widely-accepted *Lax* Factors, Mr. Thant has a larger financial interest than the Group on both a collective and individual basis:

---

[4] District courts may "select accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002).

| | **Gross Shares Purchased** | **Net Shares Purchased** | **Net Expenditures** | **Loss Suffered Under Retained Share Method**[5] | **Estimated *Dura* LIFO Loss**[6] |
|---|---|---|---|---|---|
| ***Thant*** | 136,715 | 93,715 | $872,809.06 | $308,760 | $399,645.51 |
| ***Total Group*** | 56,989 | 56,989 | $752,337.17 | $227,456.80 | $469,662.14 |
| ***SEPTA*** | 31,879 | 31,879 | $426,319.21 | $127,516 | $268,497.92 |
| ***PAT*** | 14,359 | 14,359 | $185,787.03 | $57,436 | $114,700.86 |
| ***Allegheny*** | 10,751 | 10,751 | $140,230.93 | $42,504.80 | $86,463.36 |

As further demonstrated above, the *Dura* LIFO method results in overstating the Group's recoverable losses by a wide margin.

Moreover, Mr. Thant, a retired doctor and sophisticated investor who has been investing in securities for almost thirty years, satisfies Rule 23 and, thus, is the presumptive lead plaintiff.[7] In contrast, the Group is inadequate to represent the Class by virtue of being an artificial amalgamation of plaintiffs cobbled together in an attempt to manufacture the largest interest among competing movants.

Accordingly, for these reasons, Mr. Thant respectfully requests the Court grant his motion in its entirety and deny the Group's motion.

---

[5] Mr. Thant calculated the losses of the competing movants under the retained share methodology according to the court's formula in *Markette v. Xoma Corp.*, No. 15-cv-03425-HSG, 2016 U.S. Dist. LEXIS 63701, at *20 (N.D. Cal. May 13, 2016). *First*, the number of each movant's residual shares is determined. *Second*, those shares are valued by "applying the price of the stock at the time immediately before disclosure of the purported fraud." *Id. See also Allegheny* Complaint at ¶90 ("the Company's stock price declined by more than 43% from its closing price of *$8.97* per share on February 21, 2019 to a closing price of $5.07 per share on February 22, 2019"). *Third*, the retained value of the retained shares (as prescribed by the PSLRA) is subtracted from the value of the shares immediately before the disclosure of the purported fraud. *See* Declaration of Shannon L. Hopkins In Support of Myo Thant's Memorandum of Law in Opposition to Competing Motion for Lead Plaintiff ("Hopkins Decl.") at Ex. 1 (retained share methodology loss calculation).

[6] "LIFO" stands for last in, first out and is the preferred method of matching purchases and sales because it properly offsets any gains a plaintiff might have had during the class period. *See Kaplan v. Gelfond*, 240 F.R.D. 88, 94 n.7 (S.D.N.Y. 2007). References to "*Dura* LIFO" refer to a last in, first out calculation while excluding "[s]o-called 'in-and-out transactions' (those securities both bought and sold within the class period"). *Leavitt v. Alnylam Pharm., Inc.*, 378 F. Supp. 3d 60, 64 (D. Mass. 2019) (Gorton, N.).

[7] *See* Hopkins Decl. at Ex. 2 (Declaration of Myo Thant in Further Support of His Motion for Appointment as Lead Plaintiff) ("Thant Declaration").

## ARGUMENT[8]

### A.    Mr. Thant Must Be Appointed As Lead Plaintiff

#### 1.    The Procedure Required By the PSLRA

The PSLRA requires a court to "appoint as lead plaintiff the member or members of the purported class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA creates a strong presumption that "the most adequate plaintiff . . . is the person or group of persons that (aa) has either filed the complaint or made a motion in response to a notice . . . ; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Accordingly, courts typically engage in a three-step inquiry. *First*, the court identifies all movants who timely filed a motion in response to the notice. *Second*, the court determines which competing movant has the largest financial interest in the action. *Third*, the court determines whether the movant with the largest financial interest also satisfies the adequacy and typicality requirements of Rule 23. *In re Lernout & Hauspie*, 138 F. Supp. 2d at 42-46. When all three criteria are satisfied, the presumption applies and can only be rebutted by proving that a lead plaintiff movant "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) and (bb).

---

[8] Both movants agree that consolidation is appropriate here where the Actions assert the same claims against many of the same defendants and involve the same underlying facts and circumstances. *Brown v. Biogen IDEC, Inc.*, Nos. 05-10400-RCL, 05-10453-RCL, 05-10801-RCL, 2005 U.S. Dist. LEXIS 19350, at *3-5 (D. Mass. July 26, 2005).

## 2. **Mr. Thant Claims the Largest Financial Interest Among the Competing Movants**

### i. *Mr. Thant Has the "Largest Financial Interest"*

While the PSLRA does not define the term "largest financial interest," district courts have articulated certain metrics to aid in comparing the competing financial interests of movants. *First*, most courts analyze competing movants' financial interests under the widely-accepted *Lax* Factors: (1) the total shares purchased during the class period; (2) the net shares purchased during the class period (i.e. shares retained through the end of the class period); (3) the net funds expended during the class period; and (4) the approximate losses suffered during the class period. *Lax*, 1997 U.S. Dist. LEXIS 11866 at *17. Indeed, the *Lax* Factors are routinely used by courts in this District and across the country. *See e.g.*, *Leavitt*, 378 F. Supp. 3d at 64; *Ark. Teacher Ret. Sys.*, 177 F. Supp. 3d at 622; *see also Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019).

In cases like this where the stock price lost significant value during the class period ***before*** the corrective disclosure, courts apply the retained share methodology to determine recoverable losses because it is a more accurate way to measure the damages a movant actually stands to recover in the litigation resulting from the fraud. The retained share methodology (a combination of *Lax* Factors 2 and 4) focuses exclusively on the *number of shares* that were purchased during the class period and retained through the end of the class period (when the "truth" was revealed and the artificial inflation removed) because those are the shares that are damaged when the fraud premium is removed.

To calculate recoverable losses under the retained share methodology, a movant's retained shares are multiplied by the stock price drop at the end of the class period on the corrective disclosure date,[9] thereby excluding any movement in share price during the Class Period not

---

[9] Any such calculation would be subject to damages limitations prescribed by the PSLRA.

caused by the fraud. *See Ark. Teacher Ret. Sys.*, 177 F. Supp. 3d at 622 ("courts have held that the number of net shares purchased during the class period is determinative because it equates directly with potential recovery."); *Leech v. Brooks Automation, Inc.*, No. 06-11068-RWZ, 2006 U.S. Dist. LEXIS 90153, at *7 (D. Mass. Dec. 13, 2006) (Zobel, J.) ("Other courts have equated largest financial interest with largest potential recovery. . . . [Where] the number of net shares purchased during the class period is determinative because the plaintiff who purchased the most net shares would receive the largest potential recovery.").

The retained share methodology also satisfies the Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) ("*Dura*"), which held that only losses attributable to the alleged fraud are recoverable and closely tracks what a class member or plaintiff will actually stand to recover from a plan of allocation in the event of a settlement.[10]

BLBG, counsel for the Group, agrees that this approach is appropriate and has argued in favor of the retained share methodology in similar cases. For example, in *Anderson v. Spirit AeroSystems Holdings Inc.*, Case No. 13-2261-EFM-DJW (D. Kan. 2013) ("*Spirit AeroSystems*"), BLBG argued its client had the largest financial interest based on total shares purchased, net shares purchased, net funds expended, and the retained share methodology. *See* Hopkins Decl. at Ex. 3 (opposition memorandum filed in *Spirit AeroSystems*). There, BLBG argued the "retained share methodology, which focuses on the number of shares held when the company's stock price **actually drops in response to the revelation of the fraud**, provides a more accurate measure of

---

[10] The Group may argue that Mr. Thant is not allowed to introduce a different method of calculating losses on opposition. Although Mr. Thant did not argue directly in favor of the retained share methodology in his initial papers, he provided a "Summary of Financial Interest" with his loss calculation of all four *Lax* Factors, **including net shares retained**. Thus, his retained share losses are consistent with those asserted in Mr. Thant's opening motion. Moreover, the retained share methodology is simply a modified calculation using *Lax* Factors two and four. Mr. Thant also had no reason to know that the Group would file a motion for lead plaintiff with such a discrepancy between its *Dura* LIFO losses and its recoverable losses under the retained share methodology. Mr. Thant's purchases, by contrast, were made much closer to the stock price of the Company before the end of the Class Period.

financial interest than [] LIFO losses, **which reflect various price swings during the Class Period that are unrelated to the alleged fraud**." *Id.* at 3. This is because when the truth is revealed in a single corrective disclosure, as here, there is no concern that the "fraud premium may have fluctuated throughout the Class Period" because "each share purchased during the Class Period caused the same amount of harm to investors and the net number of shares purchased during the Class Period is a strong indicator [movant] has the largest financial stake." *Id.* at 10; *see also* Hopkins Decl. at Ex. 4 (opposition brief filed in *Pio* arguing that "numerous courts have utilized the 'retained shares' loss methodology in assessing the fourth *Lax* factor in cases where, as here, [] LIFO estimates present **an inaccurate portrayal of a movant's potential 'recoverable losses**.'").[11]

### ii.   Mr. Thant Has The Largest Financial Interest of Any Movant Under All Lax Factors

As demonstrated in the table below, Mr. Thant has the larger financial interest of any lead plaintiff movant under all four *Lax* Factors:

|  | **Gross Shares Purchased** | **Net Shares Purchased** | **Net Expenditures** | **Retained Share Loss** |
|---|---|---|---|---|
| *Thant* | 136,715 | 93,715 | $872,809.06 | $308,760 |
| *Group* | 56,989 | 56,989 | $752,337.17 | $227,456.80 |

Mr. Thant purchased more shares, retained more shares, expended more funds, and has a higher loss under the retained shares methodology.

---

[11] Additionally, to the extent BLBG takes umbrage with Mr. Thant using the retained share methodology in formulating his argument in opposition, BLBG initially argued in favor of LIFO losses in both *Spirit AeroSystems* and *Pio* before attaching retained share losses on opposition. *C.f. Pio*, Dkt. No. 14-5 (attaching loss calculation with "FIFO or LIFO Loss in General Motors") *with* Dkt. No. 23-13 ("Retained Share Losses"); *c.f. also Spirit AeroSystems*, Dkt. No. 20-4 (LIFO losses) *with* Dkt. No. 29-1 ("Loss in Spirit AeroSystems Holdings, Inc. under Retained Share Methodology").

As shown below in Karyopharm's Class Period stock chart, the price of Karyopharm stock increased steadily in early 2018, peaked around $20/share in August 2018, and then steadily decreased to under $10.00 per share in 2019—***all before the revelation of the alleged fraud***:[12]



Crucially, there is only one corrective disclosure alleged in the Actions—February 22, 2019—that caused the Company stock to decrease "by more than 43% from its closing price of $8.97 per share on February 21, 2019 to a losing price of $5.07 per share on February 22, 2019, on unusually high trading volume." Thus, the retained share methodology is particularly appropriate here where, there is only one corrective disclosure and there is a constant fraud premium throughout the Class Period. *See Allegheny* Complaint at ¶¶87-90; *see also Nicolow v. Hewlett Packard Co*., No. 12-05980 CRB, 2013 U.S. Dist. LEXIS 29876, at *20 (N.D. Cal. Mar. 4, 2013) (net shares purchased and a "retained shares" loss provide the most accurate measure of loss in cases in which a single disclosure is alleged because there is a constant "fraud premium" throughout the class period). Moreover, a member of the Group—Allegheny—filed the first-filed

---

[12] Historical data provided by S&P Capital IQ. *See* Hopkins Decl. at Ex. 5.

complaint in the Actions so the Group cannot now claim its complaint missed or ignored relevant stock drops.

The Group claims a slightly higher loss under the *Dura* LIFO method of $469,662.14 as compared to Mr. Thant's marginally smaller *Dura* LIFO losses of $399,645.51. The Group's *Dura* LIFO losses, however, are improperly inflated because they include losses incurred during the Class Period prior to the corrective disclosure date which, as discussed above, are not recoverable under *Dura*. Thus, when analyzing the Group's financial interest, the Court should disregard *Dura* LIFO losses or afford them much less weight. *See Markette*, 2016 U.S. Dist. LEXIS 63701, at *16-17 ("the advantage of this 'retained shares method' is that it looks to losses experienced due to the shares that the plaintiff was holding at the time the fraud was disclosed, and thus focuses on losses caused when stock purchased at artificially[-]inflated prices decreases in value due to the disclosure of the fraud.").

Because of the fluctuations in the Company's stock price, the Group purchased large blocks of stock when the price of Karyopharm was near the high point of the Class Period explaining why its *Dura* LIFO losses are "out of sync" with the remaining *Lax* Factors:

| Date | Quantity | Price | Amount Above Price 2/21/19 Closing Price ($8.97) | Unrecoverable Loss |
|---|---|---|---|---|
| 5/3/2018 | 12,470 | $ 14.7500 | $5.78 | $72,076.60 |
| 5/4/2018 | 4,500 | $ 16.0833 | $7.11 | $32,009.85 |
| 5/7/2018 | 700 | $ 17.1216 | $8.15 | $5,706.12 |
| 5/8/2018 | 1,730 | $ 17.4800 | $8.51 | $14,722.08 |
| 8/31/2018 | 3,540 | $ 20.9607 | $11.99 | $42,447.08 |
| 9/10/2018 | 180 | $ 19.0150 | $10.05 | $1,808.10 |
| 9/11/2018 | 1,880 | $ 19.5400 | $10.57 | $19,871.65 |
| | | | **TOTAL:** | **$188,641.65** |

The retained share methodology must be applied in this case because it focuses on the number of shares held when Karyopharm's stock price dropped due to the underlying allegations and provides a more accurate measure of the Group's financial losses than *Dura* LIFO:

|  | **Recoverable Loss** | ***Dura* LIFO** | **% Difference** |
|---|---|---|---|
| ***Thant*** | $308,760 | $399,645.51 | 29.5% Increase |
| ***Group*** | $227,456.80 | $469,662.14 | ***106.5% Increase*** |

Based on the foregoing, the Group will likely ignore three out of the four *Lax* Factors, the retained share methodology, and that ***a majority*** of its *Dura* LIFO losses are due to declines in Karyopharm's stock price during the Class Period ***unrelated*** to the fraud and argue that the Court should only focus on its claimed loss. While courts have held that loss is the most important *Lax* Factor in determining largest financial interest, others have found combinations of the three remaining *Lax* Factors are outcome determinative, particularly where, as here, the stock declines before the truth is revealed. *See Cambridge Ret. Sys. v. Mednax, Inc.*, No. 18-61572-CIV-DIMITROULEAS/S, 2018 U.S. Dist. LEXIS 207064, at *42 (S.D. Fla. Dec. 6, 2018) (appointing movant with largest retained share methodology loss, more net shares retained, and higher net funds expended over competing movant with larger loss and total shares purchased); *Pio*, 2014 U.S. Dist. LEXIS 151205, at *11 ("The Court declines the invitation to ignore all but the fourth *Lax* factor in deciding which movant has the largest financial interest in this litigation" because the "first three factors provide the most objective measurement of a movant's stake in the litigation" and "courts have found the second factor — retained shares — to be the most determinative factor in approximating an investor's potential recovery") (collecting cases); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) (number of net shares purchased is "determinative" of financial interest); *Schueneman v. Arena Pharm., Inc.*, No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373, at *13-16 (S.D. Cal. Aug. 8, 2011) (appointing movant with greater shares purchased, net shares purchased and net funds expended but smaller loss).

Accordingly, Mr. Thant has the largest financial interest in this matter and should be appointed Lead Plaintiff.

### iii.  *Mr. Thant Has The Largest Individual Financial Interest*

On an individual basis, Mr. Thant has a ***significantly greater*** financial interest than all three members of the Group under **_all four_** *Lax* Factors using the retained share or *Dura* LIFO method:

|  | **Gross Shares Purchased** | **Net Shares Purchased** | **Net Expenditures** | **Retained Share Loss** | **Estimated *Dura* LIFO Loss** |
|---|---|---|---|---|---|
| *Thant* | 136,715 | 93,715 | $872,809.06 | $308,760 | $399,645.51 |
| *SEPTA* | 31,879 | 31,879 | $426,319.21 | $127,516 | $268,497.92 |
| *PAT* | 14,359 | 14,359 | $185,787.03 | $57,436 | $114,700.86 |
| *Allegheny* | 10,751 | 10,751 | $140,230.93 | $42,504.80 | $86,463.36 |

Specifically, as compared to SEPTA (the movant with the second largest financial interest), Mr. Thant purchased ***104,836 more*** total shares, retained ***61,836 more*** shares, expended ***$446,489.85 more*** during the Class Period, suffered ***$131,147.59 more*** *Dura* LIFO losses, and lost ***$181,244 more*** recoverable losses under the retained share methodology. Accordingly, on an individual basis or when comparing Mr. Thant's interest to the entire Group, Mr. Thant has the largest financial interest in this matter and should be appointed Lead Plaintiff.

### 3.  Mr. Thant Satisfies the Adequacy and Typicality Requirements of Rule 23

In addition to having the largest financial interest in the litigation, Mr. Thant satisfies the requirements of Rule 23. In choosing a lead plaintiff, the Court need only consider the adequacy and typicality prongs of Rule 23. *In re Lernout & Hauspie*, 138 F. Supp. 2d at 46 ("[o]nly the last two prongs, typicality and adequacy, need to be satisfied for purposes of this inquiry"). At this stage of the litigation, Mr. Thant need "only make a *prima facie* showing that he [] satisfies the typicality and adequacy requirements." *Leavitt*, 378 F. Supp. 3d at 65.

### i.   *Mr. Thant Satisfies the Typicality Requirement*

Mr. Thant easily satisfies the typicality requirement here because his claims arise from the same event or course of conduct and involve the same legal theories as the claims of the rest of the class. *See Leavitt*, 378 F. Supp. 3d at 65 (quoting *In re Lernout & Hauspie*, 138 F. Supp. 2d at 42-46) ("plaintiff's claim is typical if it arises from the 'same events or course of conduct' and involves the same legal theory as the claims of the rest of the class members."). The claims need not be identical. *See Swack v. Credit Suisse First Bos.*, 230 F.R.D. 250, 260 (D. Mass. 2005) ("the typicality requirement does not mandate that the claims of the class representative be identical to those of the absent class members."). Mr. Thant's claims are typical with the claims of the absentee class members because he purchased Karyopharm securities during the Class Period that were artificially inflated due to the materially false and misleading statements issued by Defendants, causing significant damages. *See Leech*, 2006 U.S. Dist. LEXIS 90153 at *8 (claims of movant with largest financial interest is typical unless their claims are "markedly different" from the claims of the class).

### ii.   *Mr. Thant Satisfies the Adequacy Requirement*

To meet the adequacy requirement of Rule 23 "plaintiffs must demonstrate that they have common interests and an absence of conflict with the class members and that the plaintiffs' attorneys are qualified, experienced and vigorously able to conduct the litigation." *Hackel v. AVEO Pharm., Inc*, Civil Action No. 19-cv-10783-ADB, 2019 U.S. Dist. LEXIS 75672, at *5 (D. Mass. May 6, 2019). Mr. Thant's interests are clearly aligned with the class because he, like all class members, suffered losses as a result of Defendants' violations of federal securities laws. Moreover, Mr. Thant has no conflicts with the other class members. Mr. Thant also has the largest financial interest in the relief sought by the Class which will motivate him to litigate the Class claims vigorously to maximize the recovery of all those who were damaged. *See Marsch v. Feng,* No. 12

Civ. 9456 (JSR), 2013 WL 3204193, at *2 (S.D.N.Y. June 12, 2013) (adequacy satisfied where movants suffered heavy losses to "ensure vigorous advocacy on behalf of the class."); *see also Leavitt*, 378 F. Supp. 3d at 66 (finding individual investor satisfied where "he has a substantial financial stake in the litigation that will ensure his vigorous prosecution of the claims").

Mr. Thant also selected and retained skilled counsel with extensive experience in securities fraud litigation ensuring that the Actions will be litigated effectively. *See* Dkt. No. 10-4 (Firm Résumé of Levi & Korsinsky); *see also* Hopkins Decl. at Ex. 6 (Firm Résumé of Andrews DeValerio LLP). Accordingly, Mr. Thant satisfies the preliminary inquiry into Rule 23's typicality and adequacy requirements for the purposes of being appointed lead plaintiff. *See Local No. 8 IBEW Ret. Plan v. Vertex Pharm. Inc.*, 52 F. Supp. 3d 337, 341 (D. Mass. 2014); *see also Leavitt*, 378 F. Supp. 3d at 66.

Recognizing the weakness of the merits of its motion, the Group may resort to *ad hominem* attacks on Mr. Thant by suggesting he has not proven his adequacy and that the Court should therefore diverge from the sequential process of the PSLRA. A well-trodden tactic is for an institution with a lower financial interest to argue that a perfectly capable individual investor has not demonstrated his adequacy or sophistication with extraneous facts about his place of residence, education, and investment history. To be sure, the PSLRA only requires that a lead plaintiff sign a "sworn certification" attesting that, *inter alia*, the movant is willing to serve as a representative party and will not accept any additional payment (besides what the PSLRA provides) for serving as a representative party. *See* 15 U.S.C. § 78u-4(a)(2); *see also Kapur v. USANA Health Scis., Inc.*, No. 2:07CV177DAK, 2007 U.S. Dist. LEXIS 77258, at *9 (D. Utah Oct. 17, 2007) (rejecting similar argument and holding that it would be "contrary to prevailing PSLRA jurisprudence" to

force an individual to "demonstrate her education, experience in the stock market, or experience in securities class actions" as a "lead plaintiff has no such burden.").

In an abundance of caution, Mr. Thant submits his Declaration herewith providing the Court with additional details as to his sophistication and ability to adequately represent the Class. Mr. Thant is a retired medical doctor that practiced oncology and hematology. Thant Declaration, ¶2. Karyopharm is an oncology-focused company and its lead drug selinexor is intended for the treatment of various types of cancer. Mr. Thant is the perfect lead plaintiff in the Actions because he, unlike any members of the Group, is an expert in oncology. *Id*. In deciding to purchase Karyopharm stock during the Class Period, Mr. Thant relied upon management's public statements and the price of the Company's stock. *Id*. at ¶4. Mr. Thant's reliance on the Company's false and misleading statements aligns perfectly with the theory of liability in the Actions.

Mr. Thant is also a sophisticated investor who invested in securities for over thirty years. Thant Declaration, ¶3. After suffering substantial damages by selling his Karyopharm securities shortly after the close of the Class Period and realizing there was a securities fraud action pending against the Defendants, Mr. Thant retained Levi & Korsinsky. Prior to doing so, Mr. Thant became apprised of the qualifications of his counsel, the lead plaintiff process, and the duties he would owe to all class members if appointed as lead plaintiff. *Id*. ¶¶8-9. Indeed, Mr. Thant has already demonstrated his adequacy as a lead plaintiff through his actions by: (1) his staying informed of the lead plaintiff process (*id*. ¶10); (2) negotiating a fee agreement with his counsel in the event the Actions are resolved successfully (*id*. ¶11); (3) providing his Karyopharm trading records to the Court and timely moving to be appointed lead plaintiff (*id*.); and (4) retaining qualified liaison counsel in Andrews DeValerio, LLP. *Id*.

The Court should reject any attempt by the Group to disparage Mr. Thant because he is an individual investor. Mr. Thant is a sophisticated individual with a serious financial interest at stake who appreciates the duties he would owe if appointed as lead plaintiff. The Court can rest assured knowing that Mr. Thant will protect the interests of the Class as lead plaintiff.

### B.    The Group Should Not Be Allowed to Aggregate Its Financial Interest

Mr. Thant definitively claims the largest financial interest of any movant before the Court—including the collective interest of the Group. The Court should not consider the Group's collective interest because it is a lawyer-driven amalgamation of three separate movants. *See Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 532 (S.D.N.Y. 2015) ("One of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation."); *see also In re Lernout & Hauspie Sec. Litig*., 138 F. Supp. 2d at 43 (noting that "[o]ne key aim" of the PSLRA "was to empower investors so that they—not their lawyers—exercise primary control over private securities litigation[]").

In its lead plaintiff application, the Group submitted a Joint Declaration to demonstrate its purported pre-existing relationship and ability to act efficiently and cooperatively as a group to represent the putative Class. The Joint Declaration, however, falls short.

Specifically, in its Joint Declaration, the Group states it will communicate "via telephone and/or email on short notice to ensure that we are able to make timely decisions." Joint Declaration at ¶11. However, such "vague discussions of general communication protocols and status reports hashed out over preliminary conference calls do little to show the groups' involvement in the litigation." *Kniffin*, 379 F. Supp. 3d at 263; *see also Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc*., No. 15-CV-3599 (KMW), 2015 U.S. Dist. LEXIS 153202, at *10-11 (S.D.N.Y. Nov. 12, 2015) (finding representations that the group would "confer via phone and/or email as necessary to ensure that [it is] able to independently communicate and make timely

decisions" as "precisely the types of statements that courts in this District have rejected as insufficient proof that a group of unrelated investors will be able to effectively manage the litigation.").

Moreover, the Group does not propose a procedure by which it will make decisions. Courts have found this, alone, renders a group incohesive. *See Lifestyle Invs., LLC v. Amicus Therapeutics, Inc*., Civil Action No. 3:15-cv-7350 (FLW) (DEA), 2016 U.S. Dist. LEXIS 68952, at *19 (D.N.J. May 26, 2016) (declining to appoint Public Pension Funds as lead plaintiff and finding "[i]mportantly, the Public Pension Funds. . . have not indicated how they will proceed in the event that their decision-makers become deadlocked."); *see also In re Van Wagoner Funds Inc. Sec. Litig*., No. C 02-03383 JSW, 2003 U.S. Dist. LEXIS 28789, at *13-14 (N.D. Cal. Apr. 9, 2003) (declining to appoint group that lacked sufficient mechanism for decision-making and evidence of cohesion). Even if the Group had proposed to put decisions to a majority vote where each member gets one vote, this would create a scenario where Allegheny and PAT—the two entities with the smallest financial interests—could override SEPTA which has a larger financial interest than the two smaller funds combined. This is contrary to the PSLRA which was designed to place control of the litigation in the hands of the lead plaintiff movant with the largest financial interest in the relief sought by the class. *See Eichenholtz v. Verifone Holdings, Inc*., No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *28 (N.D. Cal. Aug. 22, 2008) (criticizing joint decision-making plan that failed to account for financial interest). Moreover, were the Group to vest decision-making authority based on claimed loss, SEPTA's decision would always govern. This, of course, begs the question of why the other group members, Allegheny and PAT, are even necessary and further demonstrates that the Group is lawyer-driven.

C.     **The Group Should Not Be Appointed Over Mr. Thant Merely By Virtue of Its Institutional Status**

The Group may also argue that their status as institutional investors requires their appointment over Mr. Thant. There is no such provision in the PSLRA. While courts have commented that the legislative history of the PSLRA includes references to a preference in favor of institutional investors, the "statutory mechanism adopted by Congress favors institutional investors only *insofar as they have the largest financial interest in the action* and meet the requirements of Rule 23." *Gronich v. Omega Healthcare Inv'rs., Inc.*, 2018 U.S. Dist. LEXIS 51934, at *11 (S.D.N.Y. Mar. 27, 2018) (citing S. REP. 104-98, at 11) (indicating that the PSLRA will "increase the likelihood that institutional investors will serve as lead plaintiffs by requiring the court to presume that the member of the purported class with the largest financial stake in the relief sought is the 'most adequate plaintiff'").

The "most adequate plaintiff" presumption is the only one afforded a movant under the PSLRA and the statutory text does not create one for institutions. As Mr. Thant satisfies the PSLRA, the Group cannot "overcome the presumption of adequacy afforded to [Mr. Thant] as the plaintiff[] who undeniably ha[s] the largest financial interest in this case." *Francisco v. Abengoa, S.A.*, 2016 U.S. Dist. LEXIS 68145, at *16 (S.D.N.Y. May 24, 2016); *see also In re Cavanaugh*, 306 F.3d at 737 n.20 ("If financial sophistication had been Congress's principal concern, it would not have made the plaintiff who *lost* the most money the presumptive lead plaintiff.") (emphasis in original); *Hall v. Medicis Pharm. Corp.*, No. CV-08-1821-PHX-GMS, 2009 U.S. Dist. LEXIS 24093, at *19 (D. Ariz. Mar. 10, 2009) ("the plain language of the PSLRA does not permit the Court to favor Steamfitters over another plaintiff with a greater financial stake merely because Steamfitters is an institutional investor."); *In re Groupon Sec. Litig.*, No. 12 C 2450, 2012 U.S. Dist. LEXIS 123899, at *14 (N.D. Ill. Aug. 28, 2012) ("Finally, to the extent that the Pension Trust

argues that its status as the lone institutional investor creates a presumption in its favor, that argument is rejected.").

> ### D.     The Court Should Approve Mr. Thant's Choice of Counsel

The Court should also approve Mr. Thant's selection of Levi & Korsinsky as Lead Counsel. The PSLRA vests authority in the lead plaintiff to select and retain counsel for the class subject to approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). "While the Court should not be a rubberstamp, it should give the lead plaintiff['s] [] choice some weight." *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d at 46-47; *see also Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN), 2016 WL 1367246, at *7 (S.D.N.Y. Apr. 5, 2016) (there is a strong presumption in favor of approving "a properly-selected lead plaintiff's decision as to counsel."). The attorneys at Levi & Korsinsky are highly experienced in securities and class action litigation and will prosecute the Actions effectively and expeditiously.

## CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court appoint Movant as Lead Plaintiff in the Actions and approve Movant's selection of Levi & Korsinsky as Lead Counsel.

Dated: October 7, 2019               Respectfully submitted,

                                                */s/ Shannon L. Hopkins*

                                                **LEVI & KORSINSKY, LLP**
                                                Shannon L. Hopkins (BBO# 657485)
                                                1111 Summer Street, Suite 403
                                                Stamford, Connecticut 06905
                                                Tel. (203) 992-4523
                                                Fax: (212) 363-7500
                                                Email: shopkins@zlk.com

                                                *Counsel for Movant and Proposed Lead Counsel*
                                                *for the Class*

**ANDREWS DEVALERIO LLP**
Glen DeValerio (BBO# 122010)
Daryl Andrews (BBO# 658523)
265 Franklin St., Suite 1702
Boston, MA 02110
Tel. (617) 936-2796
Email: glen@andrewsdevalerio.com
Email: daryl@andrewsdevalerio.com

*Liaison Counsel for Movant*

## **CERTIFICATE OF SERVICE**

I, Shannon L. Hopkins, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on October 7, 2019.

Dated: October 7, 2019                    */s/ Shannon L. Hopkins*
                                         Shannon L. Hopkins